

1(650) 320-1808
chriskennerly@paulhastings.com

April 5, 2021

**Via ECF and E-Mail**

Hon. Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re:  *Network Apps, LLC et al v. AT&T Inc. et al*, Civ. No. 21-cv-00718-KPF
Pre-Motion Submission for AT&T's Motion to Dismiss for Lack of Standing, Expiration of the Statute of Limitations, Failure to Abide by the Mandatory Dispute Resolution Clause, and Patent Ineligibility Under 35 U.S.C. § 101

Dear Judge Failla:

Pursuant to Rule 4(A) of the Court's Individual Rules of Practice in Civil Cases, Defendants AT&T Mobility LLC and AT&T Services, Inc. (collectively, "Defendants" or "AT&T"), respectfully request the Court hold a pre-motion conference for their motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b). This case is a repackaged version of a highly similar lawsuit brought against AT&T in the Western District of Washington in 2016 and then voluntarily dismissed in 2017 in light of AT&T's motion to dismiss. The sole plaintiff in the earlier suit and the lead Plaintiff here, Network Apps, LLC ("Network Apps"), purports to be the successor-in-interest to a company known as "Mya Number."[1] Plaintiffs have again sued AT&T, this time in the Southern District of New York, alleging: (1) breach of contract, (2) patent infringement, and (3) correction of patent inventorship, all stemming from a relationship between AT&T and Mya Number that ended in 2014. The present Complaint exhibits many of the fatal shortcomings of the complaint in the prior suit. For the reasons set forth below, Defendants respectfully submit that the present suit should be dismissed in its entirety under Fed. R. Civ. P. 12(b).

**Plaintiffs Lack Standing to Bring Suit on All Counts**

Between 2012-2014, AT&T and Mya Number LLC entered into a series of agreements in Washington state (collectively, the "Agreements") relating to the development of technology that allegedly allowed for synchronous alerting and usage of multiple wireless devices utilizing a single cellular telephone number (the alleged "Twinning Solution"). Complaint, ¶¶ 23, 26, 28. Plaintiffs Kyle Shei and John Wantz allege to have engaged in that work pursuant to the Agreements. Complaint, ¶¶ 28-30. Plaintiffs' causes of action for Breach of Contract (Count 1, ¶¶ 53-61) and Correction of Inventorship (Count 3, ¶¶ 76-81) should be dismissed for lack of standing because the party to the Agreements at issue, Mya Number LLC, is ***not*** one of the named Plaintiffs in the present suit. Both counts allege that AT&T improperly used intellectual property governed by the Agreements. *See, e.g.*, Count 1, ¶ 53; Count 3, ¶ 77. However, none of the Plaintiffs here—Network Apps, LLC, Kyle Schei, and John Wantz—were parties to the Agreements, which were entered into between AT&T and Mya Number ***LLC***, a Washington limited liability company.

---

[1] Plaintiffs in the present suit also include individuals Kyle Schei and John Wantz (founders of Mya Number).



Hon. Katherine Polk Failla, U.S.D.J.
April 5, 2021
Page 2

Instead, the Complaint confusingly refers to an entity called "Mya Number, **Inc.**" to argue that Mya Number **Inc.** held and eventually assigned its intellectual property, assets, and related claims to Plaintiff Network Apps, LLC. See Complaint, ¶¶ 6, 21, 51. But the Complaint fails to explain any connection between Mya Number, **Inc.** and Mya Number **LLC.** Moreover, the Washington Secretary of State website has no records of an entity called Mya Number, **Inc.** Ex. 1. Even assuming that all references in the Complaint to Mya Number, **Inc.** are meant to refer to Mya Number **Corp.** (the actual entity converted from Mya Number **LLC**, Ex. 2), Plaintiffs' allegations still fail because Mya Number Corp. was administratively dissolved on February 2, 2015 (Ex. 3), two years before Plaintiff Network Apps LLC was formed. Ex. 4.

With regard to Plaintiffs' Patent Infringement claim (Count 2, ¶¶ 62-74), the Complaint fails to allege that any of the Plaintiffs owns any rights to the asserted U.S. Patent No. 9,438,728 (the "'728 Patent") or has any right to assert the patent. The Complaint alleges that Mya Number, **Inc.** filed the application that led to the '728 Patent on October 27, 2014. Complaint, ¶ 34. However, as noted above, Mya Number, **Inc.** apparently never existed and no record of it can be found. According to public assignment records at the U.S. Patent and Trademark Office, Mya Number **Corp.** (the successor to Mya Number **LLC**) assigned rights to the '728 Patent to Plaintiffs Schei and Wantz on December 1, 2016, *i.e.*, **after** Mya Number **Corp.** had been dissolved nearly two years earlier on February 2. 2015. Ex. 5. As a result, any purported transfer of rights from Mya Number **Corp.** to Plaintiffs Schei and Wantz have no legal effect because Mya Number **Corp.** did not even exist at the time of purported assignment—December 1, 2016.

**The Breach of Contract and Correction of Inventorship Claims Are Barred by the Statute of Limitations**

Under both New York and Washington law, Plaintiffs' Breach of Contract (Count 1) and Correction of Inventorship (Count 3) claims are barred by the statute of limitations. See N.Y. C.P.L.R. § 213(2); Wash. Rev. Code § 4.16.040(1). Plaintiffs contend that the Agreements at issue were terminated in October 2014 and attach as evidence an e-mail received by Plaintiff Kyle Schei on October 23, 2014. Complaint, ¶ 41; Complaint, Ex. 6. Plaintiffs similarly point to AT&T's filing of U.S. Patent Application 14/536,418 (the "'418 Application") on November 7, 2014 as a basis for their Breach of Contract claim. Complaint, ¶ 45. Thus, as alleged, the statute of limitations period began running on November 7, 2014 at the *latest*. However, the present suit was not filed until over 6 years later, on January 26, 2021. Because the statute of limitations expired by the time the Complaint in this case was filed, the Breach of Contract claim is barred.

**The Breach of Contract Claim Is Barred for Failure to Abide by the Mandatory Dispute Resolution Clause**

Plaintiffs' Breach of Contract claim (Count 1) alleges that AT&T failed to pay "support, maintenance, and license fees" in violation of the Agreements. Complaint, ¶¶ 33, 55-56. The Agreements, however, require the parties to conduct a multi-step dispute resolution process ***prior*** to bringing suit for alleged non-payment of fees. Plaintiffs have not satisfied this mandatory dispute resolution clause but elected to file both the earlier suit and the present suit regardless. Network Apps, LLC purported to attempt to cure this defect in 2017 after it voluntary dismissed the earlier suit, but that effort necessarily failed because it did not sufficiently demonstrate how Network Apps, LLC was assigned any rights from Mya Number Corp., or from Mya Number LLC (the actual party to the Agreements). Network Apps, LLC cannot invoke the dispute resolution clause or provide a Dispute Notice pursuant to the dispute resolution clause. Even if that first step were met, Plaintiffs still failed to satisfy the other conditions of the dispute resolution clause: (1) work to resolve the dispute within 30 days of any Dispute Notice, (2) escalate the dispute to a designated representative with sufficient authority, who would (3) meet to discuss and negotiate in good faith a

Case 1:21-cv-00718-KPF   Document 46   Filed 04/05/21   Page 3 of 4



Hon. Katherine Polk Failla, U.S.D.J.
April 5, 2021
Page 3

resolution to the dispute (4) at least 30 days before proceeding with any other available remedy, *i.e.*, the filing of a lawsuit. As Plaintiffs have failed to establish one or more conditions precedent with respect to their Breach of Contract claim, it should be dismissed.

**The Patent Infringement Claim Is Barred Because the Asserted Patent Is Invalid Under 35 U.S.C. § 101**

The '728 Patent is invalid under § 101 because it claims ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (June 19, 2014). The patent claims are virtually identical to those found by the Federal Circuit to be ineligible in *BroadSoft, Inc. v. CallWave Communications, LLC*, 282 F. Supp. 3d 771, 780-81 (D. Del. 2017), *aff'd*, 739 F. App'x 985 (Fed. Cir. 2018). In *BroadSoft*, "the problem addressed by the invention was 'redirecting the call to another number associated with the subscriber without hanging up and redialing' . . ." 282 F. Supp. 3d at 780. The claims covered a call processing method purporting to solve this problem: when a subscriber received a call, a subscriber's "instruction" would be accessed and based on that "instruction," an "outcall" would be placed to a first device associated with the subscriber. *Id.* at 776. If that first outcall is "not answered within a first number of rings or period of time," then a second outcall would be placed to a second device until the subscriber answers. *Id.* at 776-77. The alleged infringer argued and the court agreed that these "sequential dialing claims" were directed to the abstract idea of "sequentially dialing a list of telephone numbers. . ." *Id.* at 781. The court rejected the argument that the claims constitutes a patent eligible improvement to telephony technology, explaining that "[t]he 'problem' addressed by the claims is a human unavailability problem, rather than a problem specific to telephony technology. The claims do not improve telephony technology, instead invoking known telephony technology 'merely as a tool' to address this human unavailability problem." *Id.* at 781. The '728 Patent here is **virtually indistinguishable**. The specification identifies the same human unavailability problem: "It can even feel odd to call a telephone number and have the call answered by someone other than a particular person associated with the telephone number." '728 Patent at 1:26-29. The '728 Patent purports to solve this problem the same way as in *BroadSoft*—Claim 8 here is also a call processing method: when "telephone service activity" (*e.g.*, a call) is received, it is processed according to a "call policy" that "is capable of causing activation of multiple of the grouped plurality of physical telephone service user devices responsive to incoming service activity. . . ." The specification further explains that "[a]ssociated telephone service user devices may be activated simultaneously or in a specified order." '728 Patent at 5:38-40. Thus, the patent claims asserted here purport to solve **the same problem in the same way** as in *BroadSoft*, and should similarly be held patent ineligible under § 101. Because the '728 is invalid as patent ineligible, Plaintiffs' Patent Infringement claim (Count 2) should be dismissed.

**AT&T Respectfully Requests Leave to File in Excess of the Page Limits**

AT&T respectfully requests leave to file memoranda of law in excess of the 25 pages permitted by the Court's Individual Rules of Practice in Civil Cases. While AT&T is mindful of the burdens on the Court from extended page limits, the number and complexity of serious threshold issues makes additional pages appropriate. *See In re Tether & Bitfinex Crypto Asset Litig.*, 19-CV-09236-KPF (S.D.N.Y.), *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 17-CV-06221-KPF, and in *Wyche v. Advanced Drainage Sys., Inc.*, 15-CV-05955-KPF. In particular, AT&T notes that the patent eligibility issue under 35 U.S.C. § 101 would typically warrant 25 pages by itself. The issue is potentially dispositive as to the Patent Infringement claim (Count 2), requires element-by-element analysis of the claim language, and will be reviewed *de novo* on appeal by the Federal Circuit. For these reasons, AT&T proposes that the memoranda of law in support of and in opposition to AT&T's motion to dismiss be limited to **50** pages, and the reply memoranda be limited to **20** pages.



Hon. Katherine Polk Failla, U.S.D.J.
April 5, 2021
Page 4


Respectfully submitted,

*/s/ Christopher W. Kennerly*

Christopher W. Kennerly
of PAUL HASTINGS LLP

*Attorney for Defendants*


cc:     All Counsel of Record (via ECF)