# Exhibit 5

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1  
Stylesheet Version v1.2  
EPAS ID: PAT6376478

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| MYA NUMBER CORP. | 12/01/2016 |

### RECEIVING PARTY DATA

| Name: | JOHN T. WANTZ II |
|---|---|
| Street Address: | 928 LOVELL AVENUE |
| City: | BAINBRIDGE ISLAND |
| State/Country: | WASHINGTON |
| Postal Code: | 98110 |
| Name: | KYLE M. SCHEI |
| Street Address: | 928 LOVELL AVENUE |
| City: | BAINBRIDGE ISLAND |
| State/Country: | WASHINGTON |
| Postal Code: | 98110 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Patent Number: | 9438728 |

### CORRESPONDENCE DATA

Fax Number: (877)855-7448

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| Phone: | 310-876-1771 |
|---|---|
| Email: | lance@pritikinlaw.com |
| Correspondent Name: | LANCE M. PRITIKIN |
| Address Line 1: | 1801 CENTURY PARK EAST |
| Address Line 2: | 24TH FLOOR |
| Address Line 4: | LOS ANGELES, CALIFORNIA 90067 |

| ATTORNEY DOCKET NUMBER: | NWAP0101PUS |
|---|---|
| NAME OF SUBMITTER: | LANCE M. PRITIKIN/ |
| SIGNATURE: | /Lance M. Pritikin/ |
| DATE SIGNED: | 10/30/2020 |

506329727

PATENT  
REEL: 054218 FRAME: 0139

**Total Attachments: 6**
source=Assignment_Agreement_Mya-to-Founders_signed#page1.tif
source=Assignment_Agreement_Mya-to-Founders_signed#page2.tif
source=Assignment_Agreement_Mya-to-Founders_signed#page3.tif
source=Assignment_Agreement_Mya-to-Founders_signed#page4.tif
source=Assignment_Agreement_Mya-to-Founders_signed#page5.tif
source=Assignment_Agreement_Mya-to-Founders_signed#page6.tif

**PATENT**
**REEL: 054218 FRAME: 0140**

MYA NUMBER CORP

ASSIGNMENT AGREEMENT

This Assignment Agreement (this "**Agreement**") is entered into as of December 1, 2016, between mya Number Corp., a Washington corporation (the "**Assignor**"), and John T. Wantz II and Kyle M. Schei (each, an "**Assignee**" and collectively, the "**Assignees**").

RECITALS

A.  The Assignor as part of the Plan of Complete Liquidation and Dissolution dated November 30, 2016, desires to sell, dispose and contribute all its remaining assets and its respective right, title and interest in the Business Plans and Intellectual Property (as defined below) to the Assignees in exchange for the redemption of all issued and outstanding shares of the Assignor as part of the windup and dissolution of the Assignor, as provided in this Agreement.

B.  The Assignees desires to accept the Business Plans and Intellectual Property and to pay the consideration therefor as provided in this Agreement.

AGREEMENTS

1.  **Consideration**

Subject to the terms and conditions of this Agreement, the Assignees hereby agrees to exchange and redeem with the Assignor all issued and outstanding shares of each Assignee (the "**Payment**"), (which the parties have determined to be valued in excess of the fair market value of the Business Plans and Intellectual Property on the date hereof) in exchange for all right, title and interest of the Assignor in and to (i) the business concept and business plan as described in Exhibit A, (ii) all precursors, portions and work in progress with respect thereto and all ideas, concepts, inventions, works of authorship, technology, source code, information, know how, techniques, tools and materials related thereto, and (iii) all copyrights, patent rights, trade secret rights, trademark rights, mask work rights, sui generis database rights, and all other intellectual and industrial property rights of any sort, and all business, contract rights, causes of action, and goodwill in, incorporated or embodied in, used to develop, or related to any of the foregoing, all as further described on Exhibit A (collectively, the "**Business Plans and Intellectual Property**"). The Payment shall be made to the Assignor within twenty-five (25) business days of the date of this Agreement.

2.  **Assignment**

The Assignor hereby assign and contribute to the Assignees all of its respective past, present and future right, title and interest in and to the Business Plans and Intellectual Property.

3.  **Further Assurances**

(a)  The Assignor hereby agrees to assist the Assignees in every legal way to evidence, record, and perfect the assignment of the Business Plans and Intellectual Property referred to in Section 1 above and to apply for and obtain recordation of, and from time to time enforce, maintain and defend, such assigned rights. If the Assignees is unable for any reason whatsoever to obtain the Assignor's signatures to any document it is entitled to under this Section 3, the Assignor hereby irrevocably designate and appoint the Assignees and its duly authorized officers and agents as his agents and attorneys-in-fact with full power of substitution to act for and on his behalf and instead of the Assignor to execute and file any such document

or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by the Assignor.

(b) To the extent allowed by law, the Assignees and the Assignor hereby acknowledge and agree that the Business Plans and Intellectual Property assigned pursuant to Section 2 of this Agreement include all rights of paternity, integrity, disclosure, and withdrawal and any other rights that may be known or referred to as "moral rights," "artist's rights," "droit moral" or the like. To the extent the Assignor retains any such rights under applicable law, the Assignor hereby ratifies and consents to, and provides all necessary ratifications and consents to, any action that may be taken with respect to such rights by or authorized by the Assignees, and the Assignor agrees not to assert any such rights with respect thereto. The Assignor will confirm any such ratifications, consents and agreements from time to time as requested by the Assignees.

**4.    Confidential Information**

The Assignor will not use or disclose anything assigned to the Assignees hereunder or any other technical or business information or plans of the Assignees, except to the extent the Assignor (a) is authorized to use or disclose such information for and on behalf of the Assignees, (b) can document that such information is generally available (through no unauthorized disclosure of Assignor) to the public without charge, license or restriction, or (c) is permitted to use or disclose such information or plans pursuant to any other written agreement between Assignor and the Assignees. The Assignor recognizes and agrees that there is no adequate remedy at law for a breach of this Section 4, that such a breach would irreparably harm the Assignees and that the Assignees is entitled to equitable relief (including, without limitations, injunctions) with respect to any such breach or potential breach in addition to any other remedies.

**5.    Representations of Assignor**

The Assignor represents and warrants to the Assignees as follows in this Section 5.

(a) The Assignor (i) has at all times been the sole owner (other than the Assignees) of all rights, title and interest in the Business Plans and Intellectual Property (the "**Assigned Assets**"), (ii) has not assigned, transferred, licensed, pledged or otherwise encumbered any Assigned Assets or agreed to do so, (iii) has full power and authority to enter into this Agreement and to make the assignment and contribution of the Assigned Assets as provided herein, (iv) has at all times used commercially reasonable efforts to preserve the confidentiality of those aspects of the Assigned Assets that Assignor considers to constitute trade secrets and has not disclosed or otherwise dealt with such items in such a manner as to forfeit or relinquish protection of such items under the Uniform Trade Secrets Act or comparable law.

(b) The Assignor (i) has not filed any patent application or registered any work of authorship with the U.S. Copyright Office or any trademark, service mark or other source identifier with the U.S. Patent and Trademark Office with respect to any Assigned Assets, and (ii) has no actual knowledge of any prior art, fact or circumstance that could reasonably be expected to prevent the Assignees from securing patent protection for any inventions included in or derived from the Assigned Assets that otherwise could reasonably be expected to be patentable.

**6.    General**

(a) Assignment. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of, and be binding upon, the respective successors, assigns and legal representatives of the parties, but shall not otherwise be for the benefit of any third party.

PATENT
REEL: 054218 FRAME: 0142

(b)     Further Assurances. The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

(c)     Notices. Unless otherwise provided, any notice under this Agreement shall be given in writing and shall be deemed effectively given (a) upon personal delivery to the party to be notified, (b) upon confirmation of receipt by fax by the party to be notified, (c) immediately upon deliver by email to the party to be notified, (d) one business day after deposit with a reputable overnight courier, prepaid for overnight delivery and addressed as set forth in (e), or (e) 4 days after deposit with the United States Post Office, postage prepaid, registered or certified with return receipt requested and addressed to the party to be notified at the address indicated on the signature page hereto, or at such other address as such party may designate by 10 days' advance written notice to the other party given in the foregoing manner.

(d)     Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of Washington, without regard to principles of Washington law concerning conflicts of laws.

(e)     Entire Agreement. This Agreement constitutes the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersedes all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

(f)     Amendment and Waiver; Termination. This Agreement may be amended or terminated only by a written agreement executed by the Assignor and the Assignees. No amendment, waiver or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

(g)     Severability. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the forgoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court or arbitrator of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

(h)     *Attorney's Fees.* If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, including an arbitration, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including, without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

(i)     Facsimile Signatures; Counterparts. This Agreement may be executed and delivered by facsimile and upon such delivery the facsimile signature will be deemed to have the same effect as if the

3

original signature had been delivered to the other party. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

(j) Titles, Captions and Headings. The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement.

(Signature page follows)

In witness whereof, the parties hereto have executed this Assignment Agreement as of the date first written above.

**ASSIGNOR**

**MYA NUMBER CORP.**

By: *Kyle M. Schei* (DocuSigned by: C168EC8A928146]...)
Kyle M. Schei, President

**ASSIGNEES:**

*Kyle M. Schei* (DocuSigned by: C168EC8A928146]...)
Kyle M. Schei

*[signature]* (DocuSigned by: ED8160CD33BE462...)
John T. Wantz II

Signature page to Assignment Agreement

## EXHIBIT A

### BUSINESS PLAN AND INTELLECTUAL PROPERTY DESCRIPTION

1.   The business concept, business plan, market research, strategy definition and other related business materials developed by Assignor, whether independently or jointly with others, for the Assignees relating to the Assignees' business or business plans.

2.   All inventions, discoveries, designs, developments, improvements, processes, software programs, works of authorship, documentation, formulae, data techniques, know-how, secrets and intellectual property rights (whether or not patentable or registrable under copyright or similar statutes or analogous protection) made, conceived, discovered or reduced to practice by the Assignor either before the date hereof or in the course of providing services to the Assignees and relating to the Assignees' business or business plans.

3.   All ownership, moral, attribution and/or integrity rights, and the right to enforce any rights and file any causes of action, including the right to recover damages, for any past, present or future infringement or misappropriation of any of the foregoing rights assigned to Assignees.