UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NETWORK APPS, LLC, *a Washington limited liability company*, KYLE SCHEI, and JOHN WANTZ, *individuals*,

                   Plaintiffs,

                   -v.-

AT&T MOBILITY LLC, *a Delaware limited liability company*, and AT&T SERVICES, INC., *a Delaware corporation*,

                   Defendants.

21 Civ. 718 (KPF)

**REDACTED OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

It is fitting that an action centered on "twinning" technology should give rise to not one but two motions to dismiss. On June 24, 2022, Defendants AT&T Mobility LLC and AT&T Services, Inc. (collectively, "AT&T" or "Defendants") first moved to dismiss the breach of contract, patent infringement, and correction of inventorship claims brought by Plaintiffs Network Apps, LLC, Kyle Schei, and John Wantz (collectively, "Plaintiffs") in their initial complaint. On March 22, 2023, the Court granted Defendants' motion to dismiss as to the breach of contract and patent infringement claims but denied it as to the correction of inventorship claim. The Court later granted leave to amend, and Plaintiffs filed an amended complaint (the "Amended Complaint" or "AC") on March 4, 2024. Now before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court again

grants Defendants' motion as to the breach of contract and patent infringement claims but denies it as to the correction of inventorship claim.

## BACKGROUND[1]

### A.    Factual Background

The Court presumes familiarity with the allegations made in Plaintiffs' initial complaint and the procedural history of this litigation prior to its March 22, 2023 Opinion and Order.  (Dkt. #156 ("MTD Op.")).  The Court incorporates by reference the factual background detailed in that Opinion. (MTD Op. 2-10).

Briefly stated for purposes of the instant motion, Plaintiffs Kyle Schei ("Schei") and John Wantz ("Wantz") are the managing members of Network Apps, LLC ("Network Apps"), which is the assignee and owner of all the assets, including patents, contracts, and claims, previously owned by Mya Number, Corp. ("Mya Number"), a now-defunct telecommunications startup created and

---

[1]    This Opinion draws its facts primarily from the Amended Complaint ("AC" (Dkt. #171)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion, and the exhibits attached thereto, including U.S. Patent No. 9,438,728 (the "'728 Patent" (Dkt. #171-1)), and U.S. Patent No. 9,723,462 (the "'462 Patent" (Dkt. #171-2)). The Court draws additional facts from the Declaration of Joshua Yin in support of Defendants' motion to dismiss (the "Yin Declaration" or "Yin Decl." (Dkt. #183)) and the exhibits attached thereto.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #180); to Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #185); and to Defendants' reply memorandum as "Def. Reply" (Dkt. #189).

The parties also filed redacted, publicly available versions of their briefs (*see* Dkt. #181, 186, 188, and Defendants filed a redacted, publicly available version of the Yin Declaration (Dkt. #182).  Relatedly, Defendants filed a letter motion to seal portions of their opening brief (Dkt. #178); Plaintiffs filed a letter motion to seal portions of their opposition brief (Dkt. #184); and Defendants filed a letter motion to seal portions of their reply brief (Dkt. #187).

managed by Schei and Wantz. (AC ¶¶ 7, 22). In November 2012, AT&T contracted with Mya Number to integrate its "myaNumber-for-Families™" technology, which allowed users to make successive calls by dialing one telephone number, into AT&T's telecommunications offerings through a Limited Application Programming Interface Usage Agreement (the "Interface Agreement"). (*Id.* ¶¶ 22, 24). In October 2013, AT&T asked Mya Number to help develop technology — known as the "Twinning Solution," among other monikers — that would allow users to make and receive calls from their different devices (such as phones, smartwatches, and tablets) using a single phone number. (*Id.* ¶¶ 28-29, 39). This would solve the then-existing problem of each individual device having its own phone number. (*Id.* ¶¶ 28-30).

Accordingly, in November 2013, AT&T and Mya Number entered into several three-way non-disclosure agreements (the "NDAs") with equipment manufacturers. (AC ¶ 40). The NDAs provided that ███████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████ (*Id.*). Pursuant to the Interface Agreement and the NDAs, Mya Number retained the rights to all patents, copyrights, trade secrets, and other confidential and proprietary information it developed as part of the Twinning Solution. (*Id.* ¶ 68).

Under the direction of Schei and Wantz, Mya Number developed the Twinning Solution sometime between November 2013 and January 8, 2014, when it successfully demonstrated the technology to AT&T leadership. (AC

¶¶ 40, 67). Thereafter, Mya Number entered into a Professional Services Agreement (the "PSA") and an Initial Statement of Work (the "SOW") with AT&T on June 27, 2014. (*Id.* ¶ 69). Things went south in the fall of 2014, when AT&T took issue with the projected cost of royalties. (*Id.* ¶ 81). After negotiations with lawyers failed, on October 23, 2014, AT&T informed Mya Number that it would no longer be pursuing the Twinning Solution service. (*Id.*). Four days later, on October 27, 2014, Mya Number applied for a patent for the Twinning Solution, which application was granted on September 6, 2016, by the U.S. Patent and Trademark Office as U.S. Patent No. 9,438,728 (the "'728 Patent"). (*Id.* ¶ 74; *see generally* '728 Patent). A year later, in or around October 2015, AT&T launched "AT&T NumberSync," which Plaintiffs claim is a replica of the Twinning Solution, developed in part by former Twinning Solution team members who had acquired information about Mya Number's technology and used it in violation of the parties' agreements. (AC ¶¶ 82-85). Defendants filed a patent application entitled "Cloud-Based Device Twinning" on November 7, 2014, which application was granted on August 1, 2017, as U.S. Patent Number 9,723,462 (the "'462 Patent"). (*Id.* ¶ 85). Jayanta Das and Ed Schmit, the AT&T Mobility Executive Director who had initially solicited Schei and Wantz to develop the Twinning Solution, were listed as sole named inventors on the '462 Patent. (*Id.* ¶¶ 39, 85). To date, Defendants have not assigned the '462 Patent and its related family of patents to Plaintiffs, nor paid royalties, license, or maintenance fees to Plaintiffs. (*Id.* ¶¶ 90-91; *id.* at 45 ¶ VI.B).

4

B.     **Procedural Background**

The Court incorporates by reference the procedural background detailed in the initial motion to dismiss opinion.  (MTD Op. 10-12).  Shortly following the March 22, 2023 Opinion and Order, Plaintiffs filed a motion for reconsideration on April 5, 2023.  (Dkt. #157-158).  On April 10, 2023, the Court stayed all deadlines specified in that Opinion and Order, and set a briefing schedule for the reconsideration motion.  (Dkt. #159).  Defendants filed their brief in opposition on April 19, 2023 (Dkt. #161), and Plaintiffs filed their reply brief on April 26, 2023 (Dkt. #163).  While the fully-briefed reconsideration motion was pending, however, on December 18, 2023, Plaintiffs requested leave to amend their complaint (Dkt. #166), which Defendants opposed in a December 21, 2023 letter (Dkt. #167).  Although the Court had previously denied Plaintiffs' request for leave to amend (MTD Op. 58), on February 20, 2024, the Court granted the motion and denied as moot Plaintiffs' motion for reconsideration (Dkt. #170).  At the same time, the Court set a timeline for the filing of an amended complaint.  (Dkt. #170).  Plaintiffs filed the Amended Complaint, the operative complaint in this action, on March 4, 2024.  (Dkt. #171).

On April 5, 2024, Defendants filed a letter motion regarding their anticipated motion to dismiss the Amended Complaint (Dkt. #174), which Plaintiffs opposed in an April 10, 2024 letter (Dkt. #176).  On April 15, 2024, the Court dispensed with its typical requirement of a pre-motion conference and set a briefing schedule for the instant motion to dismiss the Amended

Complaint.  (Dkt. #177).  Defendants filed their opening brief on June 21,

2024.  (*See* Dkt. #179-183).  Plaintiffs filed their brief in opposition on July 19,

2024.  (*See* Dkt. #185-186).  And Defendants filed their reply brief on

August 16, 2024.  (*See* Dkt. #188-189).

On March 17, 2025, the Court filed and provided to the parties an

unredacted copy of this Opinion under seal and allowed the parties to propose

redactions in accordance with *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d

110 (2d Cir. 2006).  On or before **April 11, 2025**, the parties shall file a joint

letter suggesting redactions to the Opinion.  Taking the parties' suggestions

into consideration, the Court will then file a redacted version of the Opinion on

the public docket.

## DISCUSSION

**A.    Applicable Law**

### 1.    Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief."  *Faber* v.

*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  A plaintiff is

entitled to relief if she alleges "enough facts to state a claim to relief that is

plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see*

*also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While

*Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible." (internal quotation marks omitted and alteration adopted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers*

v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

### 2.    Choice of Law as to State-Law Claims

A federal court adjudicating a supplemental state-law claim applies the choice-of-law rules of the forum state.  *See N. Atl. Instruments, Inc.* v. *Haber*, 188 F.3d 38, 43 (2d Cir. 1999).  "Under New York law, 'courts will generally enforce choice-of-law clauses,' ... because 'contracts should be interpreted so as to effectuate the parties' intent[.]'"  *AEI Life LLC* v. *Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (quoting *Ministers & Missionaries Benefit Bd.* v. *Snow*, 26 N.Y.3d 466, 470 (2015)).  "While there is no magical incantation that parties must utter to create an effective choice-of-law provision, the clause must clearly manifest the parties' intent to be governed by the law of a particular jurisdiction."  *Id.* (citing *Welsbach Elec. Corp.* v. *MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629 (2006)).  Here, the parties do not dispute the Court's conclusion, in its March 22, 2023 Opinion and Order, that Washington law applies to this dispute.  (MTD Op. 16).

### 3.    Law of the Case

"The law of the case doctrine 'forecloses re-litigation of issues expressly or impliedly decided by the [ ] court.'"  *In re Shanda Games Ltd. Sec. Litig.*, No. 18 Civ. 2463 (ALC), 2022 WL 992794, at *3 (S.D.N.Y. Mar. 31, 2022) (alteration in original) (quoting *United States* v. *Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)), *aff'd in part, vacated in part, and remanded on other grounds*, 128 F.4th 26 (2d Cir. 2025).  The doctrine is discretionary and "counsels a

court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons." *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (internal quotation marks omitted) (citing *Ali* v. *Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)). Reasons to "depart from the law of the case and reconsider [an] issue" may include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Gulino* v. *Bd. of Educ. of N.Y.C. Sch. Dist. of City of N.Y.*, 555 F. App'x 37, 40 (2d Cir. 2014) (summary order) (internal quotation marks omitted) (quoting *Quintieri*, 306 F.3d at 1230 (quoting *United States* v. *Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000))). But, in general, "court[s] [are] 'loath[] to revisit an earlier decision in the absence of extraordinary circumstances.'" *Perlman* v. *Gen. Elec.*, No. 22 Civ. 9823 (PAE), 2024 WL 664968, at *5 (S.D.N.Y. Feb. 16, 2024) (quoting *N. River Ins. Co.* v. *Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995)), *aff'd*, No. 24-514, 2024 WL 4635235 (2d Cir. Oct. 31, 2024) (summary order).

As such, following the resolution of a motion to dismiss, "[t]he mere filing of an [a]mended [c]omplaint does not entitle [a p]laintiff to relitigate his claims absent new factual allegations." *Weslowski* v. *Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order). Indeed, "[t]he absence of new factual allegations 'counsels against reconsideration' of the Court's prior ruling." *Perlman*, 2024 WL 664968, at *5 (quoting *Weslowski*, 96 F. Supp. 3d at 316) (citing *Shanda Games*, 2022 WL 992794, at *3; *Gurvey* v. *Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2015 WL

9

4460859, at *5 (S.D.N.Y. July 21, 2015) (same)).  By contrast, "to the extent that [a p]laintiff has offered new claims or factual allegations that arguably address the deficiencies the Court previously identified, the Court will consider those claims anew."  *Weslowski*, 96 F. Supp. 3d at 316 (citing *Kregler* v. *City of New York,* 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (finding law of the case doctrine inapplicable where plaintiff made materially different and more detailed allegations and advanced a new theory of liability)).  Accordingly, courts must "examine" an amended complaint following the resolution of a motion to dismiss and "apply the law of the case doctrine to recurring issues that do not involve new factual allegations."  *Shanda Games*, 2022 WL 992794, at *3.

Here, the Court granted Defendants' motion to dismiss Plaintiffs' breach of contract and patent infringement claims and denied their motion to dismiss Plaintiffs' correction of inventorship claim.  (*See* MTD Op. 59).  Initially, the Court denied Plaintiffs' request for leave to amend (*id.* at 58), and so Plaintiffs moved for reconsideration of the Court's motion to dismiss ruling (Dkt. #157-158).  In the brief in support of their reconsideration motion, Plaintiffs argued that their breach of contract claim was not time-barred under either Washington or New York law because the agreements at issue imposed multiple, severable obligations, two of which occurred within the statute of limitations period.  (Dkt. #158 at 5-9).  Additionally, Plaintiffs argued that the Court did not sufficiently consider the allegations in the initial complaint, and the '728 Patent's specifications, when it concluded that the patent purported to

10

teach the patent-ineligible abstract idea of grouping telephone numbers and lacked an inventive concept. (*Id.* at 11-20). Plaintiffs believed that, although new facts had not emerged and there was no intervening change in controlling law, the Court had overlooked facts and arguments they had made in opposition to Defendants' motion to dismiss. (Dkt. #163 at 2).

After Plaintiffs sought leave to file an amended complaint (Dkt. #166), the Court felt "constrained to grant Plaintiffs' motion," as Plaintiffs "assert[ed] that amendment would provide information absent from the record demonstrating the uniqueness of their invention as well as a more detailed explanation of its technology," and would "clarify the basis for their breach of contract claims by making clear that" the basis for Plaintiffs' breach of contract claim was "Defendants' failure to perform independent contractual obligations set forth in the parties' agreement." (Dkt. #170 at 5). The Court expected that this amended complaint would include, for example, "additional factual allegations regarding Plaintiffs' technology" and "[s]pecific allegations detailing how Plaintiffs' technology was indeed state of the art at the time of the invention, and not just an abstract idea." (*Id.* at 5-6). Accordingly, the Court granted leave to amend and denied as moot Plaintiffs' motion for reconsideration. (*Id.* at 7).

The Court analyzes the instant motion to dismiss the Amended Complaint in light of both (i) the law of the case doctrine, which counsels against reconsidering issues already decided by the Court absent new factual allegations, and (ii) Plaintiffs' reconsideration motion, which was mooted by the

11

Court's grant of leave to amend, but which has influenced both Plaintiffs'
amendments to the complaint and their opposition to the instant motion.  Yes,
the Court granted Plaintiffs leave to amend their complaint.  But it will not
analyze the Amended Complaint's sufficiency in a vacuum.  The Court will not
accept as true "conclusory allegations or legal conclusions masquerading as
factual conclusions," *Rolon*, 517 F.3d at 149 (internal quotation marks
omitted), nor will it disturb its resolution of issues absent new factual
allegations or compelling circumstances.

## B.    Plaintiffs' Correction of Inventorship Claims

The Court begins with Plaintiffs' amended claims regarding correction of
inventorship.  To review, the Court previously concluded that Plaintiffs had
adequately pleaded "facts sufficient to support a claim for joint, but not sole,
inventorship."  (MTD Op. 34).  In an attempt to resurrect their claim for sole
inventorship, in their Amended Complaint, Plaintiffs now allege that Schei and
Wantz "*alone* co-invented and developed" the inventions described in the '462
Patent (AC ¶ 160 (emphasis added); *see also id.* ¶¶ 163, 164, 166), and that Ed
Schmit and Jayanta Das did not invent or provide any contributions to the
inventions disclosed in the '462 Patent (*id.* ¶¶ 161, 162).  Defendants argue
that, as a result, Plaintiffs have repudiated their joint inventorship theory.
(Def. Br. 15 (citing Dkt. #166 at 1 (wherein Plaintiffs argue that "[i]n the
Amended Complaint, Plaintiffs make clear that they are seeking a claim for sole
inventorship"))).  The Court finds that Plaintiffs still do not allege a plausible

12

claim under a sole inventorship theory, and that they have not repudiated their claim under a joint inventorship theory.

### 1.    Applicable Law

The Court incorporates by reference the law applicable to claims of correction of inventorship from its previous opinion.  (MTD Op. 29-31, 37-40). As relevant to the instant motion, Section 256 of the Patent Act, 35 U.S.C. § 256, "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *CODA Dev. S.R.O.* v. *Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019) (quoting *Fina Oil & Chem. Co.* v. *Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)).  "Section 256 addresses two types of inventorship errors — misjoinder and nonjoinder." *Id.*  Misjoinder occurs when a person who is not an inventor is listed as an inventor in error.  *Id.*  Section 256 provides for the deletion of a misjoined inventor "whether that error occurred by deception or by innocent mistake." *Stark* v. *Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997).  Nonjoinder occurs when a person who is an inventor has, in error, not been listed as such.  *Id.* at 1553.  In contrast with misjoinder, the error in nonjoinder "cannot involve any deceptive intention by the nonjoined inventor." *Id.*

Within a claim for nonjoinder, a plaintiff may assert sole or joint inventor status.  *See Opternative, Inc.* v. *JAND, Inc.*, No. 17 Civ. 6936 (JFK), 2019 WL 624853, at *7 (S.D.N.Y. Feb. 13, 2019).  Joint inventorship "can only arise when collaboration or concerted effort occurs — that is, when the inventors

have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly & Co.* v. *Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004). To be a joint inventor, a person must contribute in some significant manner to the invention and do more than merely explain well-known concepts or the current state of the art to the real inventors. *See Yeda Rsch. & Dev. Co.* v. *Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 617 (S.D.N.Y. 2006) (citing *Pannu* v. *Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998)). By contrast, to claim sole inventorship, "an inventor must allege that he or she conceived of every claim of the patent and that any contribution by defendants to the conception of each any every claim was insignificant." *Opternative*, 2019 WL 624853, at *8 (internal quotation marks omitted). "In addition, an inventor must allege facts that 'corroborate conception of the invention.'" *Id.* (quoting *Burroughs Wellcome Co.* v. *Barr Lab'ys, Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994)).

Lastly, a claim for correction of inventorship under Section 256 is not a cause of action for money damages. *See MarkDutchCo 1 B.V.* v. *Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 331 (D. Del. 2019) ("[Section 256] does not, however, create a cause of action for damages."), *aff'd*, No. 19-3845, 2021 WL 3503805 (3d Cir. Aug. 10, 2021). A Section 256 claim seeking only damages can be dismissed at the pleadings stage. *See id.*

### 2.    Plaintiffs Plausibly Allege Correction of Inventorship Under a Theory of Joint Inventorship, But Not Sole Inventorship

As before, the Court understands the individual Plaintiffs to be asserting a claim for nonjoinder. (MTD Op. 32; *see* AC ¶ 167 ("The omission of Mr. Schei and Mr. Wantz as inventors arose *without any deceptive intent* on the part of

14

Plaintiffs." (emphasis added)). And the Court incorporates by reference its conclusion (and the related analysis) that Plaintiffs have sufficiently pleaded a claim for joint inventorship. (MTD Op. 38-40).[2] The question this time around is whether Plaintiffs have sufficiently pleaded a claim for correction of inventorship under a sole inventorship theory. Based on the allegations in the initial complaint, the Court found that the "Individual Plaintiffs ha[d] not alleged that they conceived of the entire '462 Patent, nor ha[d] they alleged that Schmit and Das provided no or 'insignificant' contributions." (*Id.* at 38). The allegations in the Amended Complaint cure the former deficiency but not the latter, and thus do not support a contrary conclusion.

"The inventors named in an issued patent are presumed correct[.]" *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.* v. *Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009). "To overcome that presumption, a party must allege that 'the persons to be removed did not contribute to the invention of any of the allowed claims.'" *Fibrogen, Inc.* v. *Hangzhou Andao Pharm. Ltd.*, No. 22 Civ. 7148 (AMO), 2024 WL 1199018, at *3 (N.D. Cal. Mar. 20, 2024) (quoting *Hedrick*, 573 F.3d at 1297). Courts have found to be "conclusory" allegations that named inventors did not contribute to the claimed inventions, without more. *See, e.g.*, *id.* at *3-4; *Iceotope Grp. Ltd.* v. *LiquidCool Sols., Inc.*, No. 20 Civ. 2644 (WMW) (JFD), 2022 WL 204923, at *4 (D. Minn. Jan. 24, 2022) (finding allegations "conclusory" and insufficient to support "a reasonable

---

[2]    Substantially the same allegations that supported the Court's initial conclusion are included in both the initial complaint and the Amended Complaint. (*Compare* Dkt. #1 ¶¶ 25, 27, 38, 45, *with* AC ¶¶ 39-41, 78).

inference that [defendant's] employees contributed *nothing* to conceiving the inventions claimed," where plaintiff alleged that named inventors did not contribute to conceiving the claimed invention, but had knowledge of plaintiff's inventions/patent applications (emphasis added)).  On the other hand, courts have found to be sufficient "highly specific" factual allegations that the named inventors had not conceived the invention at issue, *e.g.*, allegations that the named inventors had previously failed at developing the technology at issue and distanced themselves from the plaintiffs around the time they filed for the patent.  *CODA Dev. S.R.O.*, 916 F.3d at 1359; *see also Operative*, 2019 WL 624853, at *8 (finding that plaintiff had "cured its conclusory allegations by adding allegations that" its employees' invention comprised all of the claimed limitations of the defendant's patent, and that contributions to that patent other than plaintiff's were insignificant).

Plaintiffs now allege that the Individual Plaintiffs, Schei and Wantz, "alone" co-invented the inventions described in the '462 Patent (AC ¶¶ 160, 163, 164, 166; *see also id.* ¶¶ 85-88), and that the '462 Patent's named inventors, Ed Schmit and Jayanta Das, "did not invent or provide any contributions to the inventions that are disclosed in the '462 Patent" (*id.* ¶¶ 161, 162).  As before, Plaintiffs also allege that Schmit acknowledged that Plaintiffs "built this for AT&T" (*id.* ¶ 78), and that AT&T began to distance itself from Plaintiffs around the time it filed for the '462 Patent (*id.* ¶¶ 81, 85).  Plaintiffs have literally alleged that Schmit and Das did not contribute to the inventions in the '462 Patent.  (*Id.* ¶¶ 87-88).  However, without more specific

allegations to the effect that Schmit and Das could not have contributed to the inventions in the '462 Patent, the Court finds that Plaintiffs' Amended Complaint is missing the highly specific facts necessary to overcome the presumption that the named inventors are the true inventors.  Plaintiffs counter that "AT&T asks for the impossible: that Plaintiffs allege facts proving the negative assertion that the named inventors did not contribute to the claimed invention."  (Pl. Opp. 18).  But Defendants ask only for what is required at the pleading stage, and Plaintiffs have failed to deliver it.  The allegations do not "allow the reasonable inference that [the Individual Plaintiffs] conceived the invention of the ['462 Patent] and that [the named inventors] did not."  *CODA Dev. S.R.O.*, 916 F.3d at 1359.  Accordingly, the Court concludes that Plaintiffs fail to sufficiently allege a correction of inventorship claim under a theory of sole inventorship.

As for whether Plaintiffs have repudiated their correction of inventorship claim under a joint inventorship theory, the Court finds that they have not. Defendants argue that Plaintiffs "specifically repudiated a joint inventorship theory" when, in Plaintiffs' letter motion seeking leave to amend, Plaintiffs stated that their amended complaint would "make clear that they are seeking a claim for sole inventorship."  (Def. Br. 15 (citing Dkt. #166 at 1)).  Plaintiffs do not respond to this contention in their opposition brief (*see* Pl. Opp. 17-20), leading Defendants to argue that "Plaintiffs do not dispute that they dropped their joint inventorship claim" (Def. Reply 12).  The Court disagrees.  The Court found that the initial complaint set forth "alternative" claims for joint and sole

inventorship.  (MTD Op. 32).  Here, the Court interprets Plaintiffs' pre-motion letter, in connection with the allegations in the Amended Complaint, to mean that Plaintiffs are seeking a claim for sole inventorship in addition to a claim for joint inventorship.  The allegations the Court found sufficient to state a claim for joint inventorship are still present in the Amended Complaint. (*Compare* Dkt. #1 ¶¶ 25, 27, 38, 45, *with* AC ¶¶ 39-41, 78).  And the Court has to believe that Plaintiffs could not have meant to squander the only claim that survived the first motion to dismiss.  Therefore, the Court finds that Plaintiffs have not repudiated their joint inventorship claim.

Lastly, the Court will not dismiss Plaintiffs' correction of inventorship claim on the ground that they improperly seek monetary damages, as Defendants argue.  (Def. Br. 15-16).  True, Plaintiffs allege in their Amended Complaint that they have suffered "damage" as a result of their erroneous omission from the '462 Patent.  (AC ¶¶ 168, 170).  But they also assert that "[u]nder 35 U.S.C. § 256, Mr. Schei and Mr. Wantz should be named as the only inventors on the '462 Patent" (*id.* ¶ 166), and, accordingly, they seek "[a] judgment declaring that Mr. Schei and Mr. Wantz are the only true inventors of the '462 Patent and any and all other related continuation and divisional patents" (*id.* at 46 § VI.I).  This sort of relief is permitted under Section 256. *See CODA Dev. S.R.O.*, 916 F.3d at 1358.  As they must, in their opposition brief, Plaintiffs disclaim that they are specifically seeking damages for the correction of inventorship claim.  (Pl. Opp. 20).  Accordingly, the Court will not dismiss Plaintiffs' correction of inventorship claim on this ground.

C.      **Plaintiffs' Breach of Contract Claim**

The Court now turns to Plaintiffs' breach of contract claim, which it

dismissed as initially pleaded on the grounds that it was time-barred.  (MTD

Op. 40-48).  In particular, after holding that the statute of limitations for the

claim was six years (*id.* at 44), the Court found that

> *the thrust of Plaintiffs' breach claim* is that (i) "AT&T
> *used intellectual property and proprietary information*
> *obtained from Mya Number under the PSA, NDAs[,] and*
> *Interface Agreement* to pursue AT&T's own patent
> related to 'twinning,'" and (ii) Ed Schmit, listed as an
> inventor on the '462 Patent, worked with Mya Number
> on the Twinning Solution, "*had access to and*
> *knowledge of Mya Number's confidential information*
> *and innovative technology under the provisions of the*
> *PSA, NDAs and Interface Agreement[,]* ... and improperly
> used such information obtained from Mya Number in
> pursuit of the invention in the '462 Patent."  [Dkt. #1
> ¶ 45].  The Court discerns the relevant accrual date
> from those allegations, and not from Plaintiffs'
> arguments in opposition to the motion.

(MTD Op. 45 (emphases added)).  Accordingly, the Court held that the "breach

of contract claim accrued, at the latest, on November 7, 2014, the day the '462

Patent Application was filed," and, "[a]s such, Plaintiffs' filing of the [initial

c]omplaint on January 26, 2021, renders the breach claim untimely under

Washington and New York law."  (*Id.* at 48).  In so concluding, the Court

rejected Plaintiffs' argument that "the breach arose solely from (i) Defendants'

alleged failure to pay Plaintiffs licensing and royalty fees for its use of the

proprietary Twinning Solution; and (ii) Defendants' alleged failure to assign to

Plaintiffs the '462 Patent and related patents."  (*Id.* at 44).  Although this would

19

have allowed Plaintiffs' breach of contract claim to stay inside the statute of limitations, the Court was "not convinced." (*Id.* at 45).

Following amendment, Plaintiffs have replaced their single breach of contract claim with two, purportedly distinct, breach of contract claims. *First*, Plaintiffs claim that AT&T "agreed to pay Mya Number [ ] royalty and maintenance fees in consideration for use of Mya Number's intellectual property" (AC ¶ 98), but breached the Interface Agreement, the NDAs, the PSA, and the SOW by "failing to pay [any] royalty and maintenance fees to Mya Number and/or its assignee, Network Apps" (*id.* ¶ 100). *Second*, Plaintiffs claim that AT&T "agreed to assign to Mya Number any intellectual property rights to the Twinning Solution that AT&T obtains" (*id.* ¶ 104), but "failed to assign to Mya Number" the patents that "cover the Twinning Solution" (*id.* ¶ 105) and thus "breached the terms of the SOW" (*id.* ¶ 106).

Although these claims do not amount to new factual allegations, the Court takes up Plaintiffs' invitation to reconsider (in light of the Amended Complaint and additional briefing) whether they amount to separate and independent breaches, allowing Plaintiffs' breach of contract claims to be timely.[3]  As before, the Court is not convinced.  These purportedly distinct breach of contract claims flow from AT&T's improper use of the Twinning

---

[3]     Plaintiffs note that the "arguments raised herein were not decided by the Court" because the Court's grant of leave to amend mooted Plaintiffs' motion for reconsideration.  (Pl. Opp. 7 n.3).  That is not quite true (the Court did, in fact, previously decide — or at least opine on — whether Defendants breached one contractual duty, or three distinct ones (*see* MTD Op. 44-45)), and, thus, the Court considers the arguments raised in the briefs with deference, where it is due, to the law of the case.  *See supra* A.3.

20

Solution, which accrued, at the latest, when the '462 Patent Application was filed on November 7, 2014, outside the statute of limitations.

### 1. Applicable Law

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)." *2002 Lawrence R. Buchalter Alaska Tr.* v. *Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) (internal quotation marks and alteration adopted). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul* v. *Cong. of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Where the complaint "clearly shows the claim is out of time," it should be dismissed with prejudice. *See Troni* v. *Holzer,* No. 09 Civ. 10239 (WHP), 2010 WL 3154852, at *2, *5 (S.D.N.Y. July 29, 2010) (dismissing claims on statute of limitations grounds (quoting *Harris* v. *City of New York*, 186 F.3d 243, 250 (2d Cir. 1999))).

Where a cause of action accrues outside of New York to a non-New York resident, New York's borrowing statute requires the court to apply the shorter limitations period, including all relevant tolling provisions, of either New York or the state where the cause of action accrued. *See, e.g.*, *Stuart* v. *Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 202); *Woori Bank* v. *Merrill Lynch*, 923 F. Supp. 2d 491, 494 (S.D.N.Y. 2013) ("Under

the borrowing statute, a plaintiff's claim is not barred if it is timely under both the statute of limitations of New York and of the jurisdiction in which the cause of action accrued."), *aff'd*, 542 F. App'x 81 (2d Cir. 2013); *Antone* v. *Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 31 (1984) ("[I]n borrowing a [s]tatute of [l]imitations of another [s]tate, a New York court will also borrow the other [s]tate's rules as to tolling" (internal quotation marks omitted)).

A determination of which state's limitations period is shorter requires a comparison of the two states' laws. Both Washington and New York specify six-year statutes of limitations for breach of contract claims, both of which run from the date the contract was breached. *See* N.Y. C.P.L.R. §§ 203(a), 213(2); Wash. Rev. Code. Ann. § 4.16.040(1). Under Washington law, "a general breach of contract claim accrues *on the date of the breach*, not discovery of the breach." *Schreiner Farms, Inc.* v. *Am. Tower, Inc.*, 293 P.3d 407, 411 (Wash. Ct. App. 2013) (emphasis added) (citing *1000 Va. Ltd. P'ship* v. *Vertecs Corp.*, 146 P.3d 423, 429 (Wash. 2006) ("[T]his court has consistently held that accrual of a contract action occurs on breach."), *as corrected* (Nov. 15, 2006)). Similarly, "New York does not apply the 'discovery' rule to statutes of limitations in contract actions." *ACE Sec. Corp.* v. *DB Structured Prods., Inc.*, 25 N.Y.3d 581, 594 (2015) (citing *Ely-Cruikshank Co.* v. *Bank of Montreal*, 81 N.Y.2d 399, 403 (1993)). "Under New York law, a cause of action for breach of contract accrues ... when the contract is breached." *Ezra* v. *Weitz & Luxenberg, P.C.*, 794 F. App'x 27, 28-29 (2d Cir. 2019) (summary order) (omission in original) (internal quotation marks omitted). "This rule applies even when the injury

arises well after the breach occurred or when the injured party is ignorant of the breach." *Id.* (citing *Ely-Cruikshank Co.*, 81 N.Y.2d at 402).

### 2. Plaintiffs' Breach of Contract Claims Are Time-Barred

At issue here is when the breach(es) occurred. Plaintiffs argue that the Amended Complaint alleges breaches of three independent contractual obligations under the Agreements: (i) the duty not to improperly use their intellectual property to seek a patent; (ii) the duty to transfer rights Defendants obtained in Plaintiffs' intellectual property to Plaintiffs; and (iii) the duty to pay Plaintiffs royalties and maintenance fees based on Defendants' use of Plaintiffs' intellectual property. (Pl. Opp. 3-4). This time around, the parties' dispute centers on the alleged breaches of the latter two contractual duties, which Plaintiffs argue occurred within six years of filing the initial complaint. (*Id.* at 4). The Court finds that none of Plaintiffs' breach claims is timely because they all flow from Defendants' misuse of Plaintiffs' intellectual property, which occurred, at the latest, when the '462 Patent Application was filed on November 7, 2014, beyond the limitations period.

The antecedent question is whether, under either New York or Washington law, these two purportedly distinct breach claims are, in fact, distinct. They are not. Under New York law, "[i]n applying the [s]tatute of [l]imitations, courts must look to the essence of the claim, and not to the form in which it is pleaded." *Kapernekas* v. *Brandhorst*, 638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009) (internal quotation marks omitted) (citing *Green Bus Lines, Inc.* v. *Gen. Motors Corp.*, 565 N.Y.S.2d 124, 125 (2d Dep't 1991); *Brick* v. *Cohn-*

*Hall-Marx Co.*, 276 N.Y. 259, 264 (1937) ("[I]n applying the [s]tatute of [l]imitations we look for the reality, and the essence of the action and not its mere name.")).  Part and parcel of this analysis is that a cause of action for breach accrues at the time of the alleged breach, and not when the non-breaching party suffers a particular injury.  *Ezra*, 794 F. App'x at 28-29 (citing *Ely-Cruikshank Co.*, 81 N.Y.2d at 402).  On this point, Defendants direct the Court primarily to two cases in which courts applying New York law started the limitations clock when the agreements were first breached: *Arcadia Biosciences, Inc.* v. *Vilmorin & Cie.*, 356 F. Supp. 3d 379 (S.D.N.Y. 2019), and *V.E.C. Corp. of Del.* v. *Hilliard*, 896 F. Supp. 2d 253 (S.D.N.Y. 2012).  (*See* Def. Br. 9-12).

In *Arcadia*, the plaintiff alleged that the defendants breached an NDA by taking, misusing, and disclosing confidential information.  356 F. Supp. 3d at 396.  The defendants argued that the claim was time-barred.  *Id.* at 396-97. Although two of the plaintiff's three patent applications related to its breach claim were filed within the statute of limitations period, the court concluded that because "each of these applications was preceded by a provisional ... application filed outside the statute of limitations ... any confidential information allegedly misused or disclosed in preparing the later applications was also allegedly misused or disclosed in preparing the earlier applications." *Id.* at 399.  In so concluding, the court found that the "relevant issue to [the plaintiff's] breach of contract claim is whether the filing of the [provisional] applications involved the misuse or disclosure of confidential information."  *Id.*

In other words, the *Arcadia* court "started the clock not on subsequent acts or injuries that occurred within the limitations window, but rather on when the first alleged breach occurred outside of the limitations window." (Def. Br. 9). The court in *V.E.C. Corp.* similarly concluded that there was no "force to [the p]laintiff's arguments that the actions undertaken … after [the initial breach] constitute separate, actionable breaches of contract" that would re-start the limitations clock. 896 F. Supp. 2d at 261. The plaintiff did "not allege an agreement with [the defendant] *apart* from the" agreements that were breached outside the limitations period. *Id.* Therefore, the court concluded, the fact that "subsequent acts may have contributed to [the p]laintiff's losses on the alleged breach does not serve to re-start the limitations period." *Id.* (citing *Ely-Cruikshank Co.*, 81 N.Y.2d at 402).

As for Washington law, just like under New York law, a breach of contract action accrues at the time of breach, *see 1000 Va.*, 146 P.3d at 429, and the statute of limitations "is not postponed until the specific damages for which the plaintiff seeks recovery actually occur," *Green* v. *A.P.C. (Am. Pharm. Co.)*, 960 P.2d 912, 916 (Wash. 1998). Indeed, the Washington Supreme Court in *Green* explained that "[t]o hold otherwise would run contrary to important policy considerations such as Washington's strong preference for avoiding the splitting of causes of action." 960 P.2d at 916 (citing *State* v. *Superior Ct. for Ferry Cnty.*, 261 P. 110 (Wash. 1927)). It elaborated that allowing a plaintiff to "have a new action for damages for each new condition that became manifest" would "lead to the highly impractical consequence of multiple statutes of

25

limitations applying to the same allegedly wrongful conduct." *Id.* Courts applying Washington law have adhered to these principles. *See, e.g.*, *Stedman* v. *Progressive Direct Ins. Co.*, No. C18-1254 (RSL), 2019 WL 1013456, at *3 (W.D. Wash. Mar. 4, 2019) (where defendant was alleged to have breached an insurance contract by terminating plaintiff's benefits, finding that "[t]olling the statute of limitations until [plaintiff] actually paid a medical bill or avoided treatment would give the plaintiff and her doctors control over the date of accrual" and "would hardly compel plaintiff to file suit within a reasonable time after the defendant's wrongful act").

The Court finds that under neither New York law nor Washington law can Plaintiffs claim that the subsequent alleged "breaches" re-started the limitations clock. Defendants' failure to assign/transfer the rights to the '462 Patent, and their failure to pay royalties and maintenance fees, are, in essence, subsequent injuries that flow from Defendants' initial breach of their contractual duty not to misuse Plaintiffs' intellectual property to apply for the '462 Patent. As it was two years ago, the Court remains "not convinced" (MTD Op. 45) that these are distinct breaches of separate contractual obligations. Now, as before, Plaintiffs allege that AT&T "took the intellectual property and proprietary information obtained from Mya Number under the [Agreements] to pursue AT&T's own patent related to 'twinning.'" (AC ¶ 85). And now, as before, the Court finds that "the claimed need for licensing and royalty fees would never have arisen absent Defendants' misuse of confidential information

learned through the Twinning Solution development process and the '462 Patent application filed in connection therewith." (MTD. Op. 46).

Plaintiffs' argument that the Agreements contain severable, independent contractual obligations to (i) transfer the '462 Patent rights and (ii) to pay royalties and other fees is misguided. It is true, as Plaintiffs argue, that under both Washington and New York law, a contract containing distinct obligations can give rise to separate, independent causes of action for breach. (Pl. Opp. 6-8 (citing, *e.g.*, *Kenworth Sales Co.* v. *Salantino*, 281 P. 996, 998 (1929); *Pagano* v. *Smith*, 608 N.Y.S.2d 268, 270 (2d Dep't 1994))). According to Plaintiffs, it follows that "AT&T cannot secretly apply for a patent and claim that, by doing so, AT&T has voided its entirely distinct royalty payment obligations." (*Id.* at 9). Plaintiffs point to severability clauses in the PSA and SOW, as well as separate consideration. (*Id.* (citing Dkt. #183-1 at 14, ¶ 25(d); Dkt. #183-3 at 4-8)). As the Agreements are distinct, Plaintiffs argue, the claim for breach of the duty to transfer the '462 Patent rights accrued on August 1, 2017 (when that patent issued), and the claim for breach of the duty to pay royalties accrued no earlier than October 2015 (when AT&T launched its NumberSync system) — both inside the limitations period. (*Id.* at 9-10).

However, the duties Plaintiffs alleged were breached are not independent contractual duties. True, the obligation to pay royalties, for example, is factually distinct from the obligation not to misuse Plaintiffs' intellectual property. But the subsequent failure to pay royalties is factually intertwined with the earlier misuse of Plaintiffs' intellectual property. The failure to pay

royalties and/or to transfer the patent rights are part and parcel of that misuse. Breach of the former duties would not have occurred absent the latter. The obligations in the Agreements are simply not divisible in nature, *cf. Kenworth*, 281 P. at 998, as in an installment contract, *cf. Pagano*, 608 N.Y.S.2d at 270. Rather, AT&T's failure to assign the patent and pay royalties amount to subsequent injuries stemming from the initial alleged breach: misusing Plaintiffs' technology to seek a patent. *See Arcadia*, 356 F. Supp. 3d at 399; *V.E.C. Corp.*, 896 F. Supp. 2d at 261; *Green*, 960 P.2d at 916.[4] Thus, a six-year statute of limitations applies, and, like the initial breach claim, these two purportedly distinct breach claims are time-barred.

The Court cannot end its analysis here, however, as Plaintiffs raise a few more arguments about the statute of limitations. Chief among them is Plaintiffs' argument that all breaches occurred within the limitations period as extended by New York's COVID-19 pandemic tolling. (Pl. Opp. 4-6). Specifically, Plaintiffs argue that two of then-New York Governor Andrew Cuomo's executive orders tolled the statute of limitations by 228 days, allowing

---

[4]    The Court need not address Plaintiffs' argument that they never regarded the Agreements as totally breached. (Pl. Opp. 14-15). True, Plaintiffs could have treated Defendants' initial breach as a total breach and elected to terminate the Agreements, rather than sue for partial breach. *See Cary Oil Co.* v. *MG Refin. & Mktg., Inc.*, 90 F. Supp. 2d 401, 408-09 (S.D.N.Y. 2000); *Colo. Structures, Inc.* v. *Ins. Co. of the W.*, 167 P.3d 1125, 1131 (Wash. 2007). But the fact that "[t]here is no allegation in the operative complaint that Plaintiffs chose to declare a total breach of the contracts in issue" (Pl. Opp. 15), is irrelevant to the legal question, decided by the Court here, concerning whether the other contractual duties are independent of the initially-breached contractual duty. Likewise, the Court need not address whether Plaintiffs' lack of anticipatory repudiation (as the Court previously found (*see* MTD Op. 41 n.7)) means that AT&T's initial breach by pursuing the patent "did not cause all of Network Apps' other contractual breach claims to instantly accrue." (Pl. Opp. 16). The claims are simply not independent of each other for statute of limitations purposes.

all of Plaintiffs' claims to fall within the six-year period.  (*Id.* at 4).  *See* N.Y. Comp. Codes R. & Regs. tit. 9, §§ 8.202.67, 8.202.9 (2020).  Setting aside the facts that (i) Plaintiffs elsewhere appear to concede that the claim related to breach of Defendants' duty not to misuse Plaintiffs' intellectual property is time-barred (Pl. Opp. 3-4), and (ii) Plaintiffs did not raise this particular tolling argument in their opposition to the first motion to dismiss (*see* Dkt. #141), this argument is unavailing.

New York's borrowing statute requires courts to apply the shorter limitations period, "including all relevant tolling provisions," of either New York or the state where the cause of action accrued (here, Washington).  *Stuart*, 158 F.3d at 627; *see also Deutsche Bank Nat'l Tr. Co.* v. *Barclays Bank PLC*, 34 N.Y.3d 327, 339 (2019) ("CPLR 202 calls for a comparison of New York's 'net' limitations period, integrating all relevant New York extensions and tolls, and the foreign state's 'net' limitations period, with all foreign tolls and extensions integrated[.]").  Plaintiffs concede that "Washington [S]tate did not implement any statewide tolling in response to the COVID-19 pandemic."  (Pl. Opp. 5). Thus, for Plaintiffs' argument to have any force, New York's tolling would have to apply to Washington's statute of limitations.  But it does not.  In fact, the Second Circuit squarely rejected an analogous argument, albeit in a summary order.  *See Afanassieva* v. *Page Transp., Inc.*, No. 21-3090, 2022 WL 7205009, at *2 (2d Cir. Oct. 13, 2022) (summary order) ("Plaintiffs argue that the district court should have applied New York's 228-day tolling period instead of New Jersey's 56-day period.  This is incorrect."); *see generally Uviles* v. *City of New*

*York*, — F.4th —, No. 23-903, 2025 WL 610306, at *6 (2d Cir. Feb. 26, 2025)

("And it is also true that our denying summary orders precedential effect does

not mean that the court considers itself free to rule differently in similar cases."

(internal quotation marks omitted)).  If Plaintiffs were New York residents, then

they would benefit from the New York limitations period if it were longer.  *See*

*Afanassieva*, 2022 WL 7205009, at *2 (citing *Thea* v. *Kleinhandler*, 807 F.3d

492, 497 (2d Cir. 2015)).  But they are not.  (*See* AC ¶¶ 7-9).  Regardless of

whether *New York*'s statute of limitations was affected by New York's pandemic

tolling,[5] then, Washington's was not, which means Washington's is the shorter

limitations period,[6] and, therefore, the applicable one.[7]  As discussed above,

---

[5]    As the Court need not weigh in on the open question of whether New York's statute of limitations was tolled (allowing Plaintiffs' breach claims to be timely if New York's statute of limitations applied), or merely suspended (meaning Plaintiffs' breach claims would be time-barred if New York's statute of limitations applied) by Governor Cuomo's executive orders, it will not do so.  *See Uzoigue* v. *Charter Commc'ns, LLC*, No. 23 Civ. 7383 (HG) (LB), 2024 WL 1756503, at *3 (E.D.N.Y. Apr. 24, 2024) (collecting cases), *appeal filed*, No. 23-1399 (2d Cir. May 22, 2024).

[6]    Plaintiffs rely on *Cavalry SPV I, LLC* v. *King*, 151 N.Y.S.3d 802 (N.Y. Civ. Ct., N.Y. Cnty. 2021), in arguing that New York's pandemic tolling measures apply to Washington's statute.  (*See* Pl. Opp. 5-6).  Their reliance is misplaced.  In *Cavalry*, the Civil Court of the City of New York concluded that, under New York's borrowing statute, it could add New York's pandemic tolling period to South Dakota's limitations period, allowing an action that was otherwise time-barred to be timely.  151 N.Y.S.3d at 807-08.  Citing the "dire public health emergency," the court found that because "[i]t was not only unsafe to file a new action in New York City but impossible to do so," it would apply New York's tolling to South Dakota's statute of limitations.  *Id.* at 807.  However, as the Second Circuit's subsequent decision in *Afanassieva* v. *Page Transportation, Inc.*, No. 21-3090, 2022 WL 7205009, at *2 (2d Cir. Oct. 13, 2022) (summary order), demonstrates, this analysis is at odds with New York law.  *Cf., e.g.*, *Deutsche Bank Nat'l Tr. Co.* v. *Barclays Bank PLC*, 34 N.Y.3d 327, 339 (2019) (noting that comparison of states' limitation periods is to be conducted using "net" of extensions and tolling periods).  Therefore, the Court declines Plaintiffs' invitation to apply the *Cavalry* reasoning.

[7]    For the avoidance of doubt, the Court reiterates that, because there is no continuing violation doctrine under Washington law, New York's borrowing statute means the doctrine would not apply, and therefore Plaintiffs cannot argue that each individual breach restarted the clock under the continuing violation doctrine.  (*See* MTD Op. 48 n.11).  Plaintiffs make passing reference to the continuing violation doctrine in their opposition brief.  (Pl. Opp. 10 n.7).

Plaintiffs' breach of contract claims are time-barred under the six-year limitations period.[8]

## D.    Plaintiff's Patent Infringement Claim

What remains is Plaintiffs' patent infringement claim. To review, the Court "has already thoroughly analyzed [the '728 Patent] and concluded that the claims are patent ineligible." (Def. Reply 12 (citing MTD Op. 48-58)). In this regard, the Court cannot ignore that many of the amendments to Plaintiffs' complaint are copied from the very arguments made in their opposition to the first motion to dismiss. (*See* Yin Decl., Ex. 2). As a reminder, the Court will consider anew factual allegations that arguably address the deficiencies the Court previously identified, *see Weslowski*, 96 F. Supp. 3d at 316, but it will "apply the law of the case doctrine to recurring issues that do not involve new factual allegations," *Shanda Games*, 2022 WL 992794, at *3. Seeing as the amendments to Plaintiffs' complaint are mostly directed at surviving *Alice* step two, the Court declines to disturb its finding that the '728 Patent fails *Alice* step one because the patent is directed to a patent-ineligible abstract idea. To the extent that new allegations in Plaintiffs' Amended Complaint are factual and not conclusory, the Court finds that the patent lacks an inventive concept sufficient to save Plaintiffs' abstract idea at *Alice* step two.

---

[8]    The Court does not decide whether, as Defendants argue, Plaintiffs' breach claims should be dismissed because they have failed to abide by a mandatory dispute resolution provision in the PSA/SOW. (Def. Br. 13-14 (citing Dkt. #135-3 at 14)). The mandatory dispute resolution provision does not apply to ███████████████████████ ███████████████████████████████████████████ (*Id.* at 14 (citing Dkt. #135-3 at 14)). The Court need not address whether the provision applies, as it dismisses the breach of contract claims as time-barred.

1.    **Applicable Law**

Although the Court already set forth the applicable law in its March 22, 2024 Opinion and Order (*see* MTD Op. 48-51), it does so here to the extent relevant to the instant motion.  Section 101 of the Patent Act defines patent-eligible subject matter.  It provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  That provision, however, "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. Ltd.* v. *CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks omitted).  A claim falls outside Section 101 where the patent (i) is "directed to" a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (ii) if so, lacks a saving "inventive concept," *i.e.*, where the particular elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application."  *Id.* at 217 (quoting *Mayo Collaborative Servs.* v. *Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78-79 (2012)).  These are respectively referred to as *Alice* step one and *Alice* step two.  *See, e.g.*, *RecogniCorp, LLC* v. *Nintendo Co., Ltd.*, 855 F.3d 1322, 1326-28 (Fed. Cir. 2017); *Synopsys, Inc.* v. *Mentor Graphics Corp.*, 839 F.3d 1138, 1146-52 (Fed. Cir. 2016).  The two stages of the *Alice* inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims."  *Elec. Power Grp.* v. *Alstom S.A.*, 830 F.3d

32

1350, 1353 (Fed. Cir. 2016) (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611-15 (Fed. Cir. 2016); *Genetic Techs. Ltd.* v. *Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016)).

Subject matter eligibility under Section 101 is a question of law suitable for resolution on a Rule 12(b)(6) motion. *SAP Am., Inc.* v. *InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing *Two-Way Media Ltd.* v. *Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017); *RecogniCorp*, 855 F.3d at 1328; *FairWarning IP, LLC* v. *Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016); *Genetic Techs.*, 818 F.3d at 1380; *Ultramercial, Inc.* v. *Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014)).  "Patent eligibility can be determined at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'"  *Voter Verified, Inc.* v. *Election Sys. & Software LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018) (quoting *Aatrix Software, Inc.* v. *Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).  However, if the "allegations at a minimum raise factual disputes underlying the [Section] 101 analysis," then the claim should not be dismissed at the Rule 12(b)(6) stage.  *Aatrix*, 882 F.3d at 1126.  A patent is presumed to be valid, and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282(a); *cf. Tranxition, Inc.* v. *Lenovo (United States) Inc.*, 664 F. App'x 968, 972 n.1 (Fed Cir. 2016) (indicating that district court erred by not applying a presumption of validity in deciding Section 101 eligibility).

The focus of a Section 101 inquiry, in both *Alice* steps, is on the asserted claims.  *See Synopsys*, 839 F.3d at 1149 ("The [Section] 101 inquiry must focus on the language of the [a]sserted [c]laims themselves."); *Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) ("We focus here on whether the claims of the asserted patents fall within the excluded category of abstract ideas."), *cert. denied*, 577 U.S. 914 (2015); *see also Trinity Info Media, LLC* v. *Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023) ("Our focus is on the claims, as informed by the specification."); *RecogniCorp*, 855 F.3d at 1327 ("To save a patent at step two, an inventive concept must be evident in the claims.").  Indeed, "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that *contradict* matters properly subject to judicial notice or by exhibit, such as *the claims and the patent specification.*"  *Yu* v. *Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) (alteration in original) (emphases added) (internal quotation marks omitted) (quoting *Secured Mail Sols. LLC* v. *Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017)), *cert denied*, 142 S. Ct. 1113 (2022).

### 2.    The Court Dismisses Plaintiffs' Patent Infringement Claim

#### a.    *Alice* Step One

As before (*see* Dkt. #1 at ¶ 66), Plaintiffs allege that "AT&T directly infringes, either literally or under the doctrine of equivalents, claims 1, 8, and 17 of the '728 Patent."  (AC ¶ 150).  The Court previously excerpted relevant parts of Claims 1, 8, and 17 of the '728 Patent, and therefore will not do so here.  (*See* MTD Op. 51-54).  The Court concluded that the '728 Patent was

directed to the patent-ineligible abstract idea of "grouping and forking phone numbers." (*Id.* at 54). In doing so, the Court relied on *Alice* itself, as well as *BroadSoft, Inc.* v. *CallWave Communications, LLC*, 282 F. Supp. 3d 771 (D. Del. 2017), *aff'd*, 739 F. App'x 985 (Fed. Cir. 2018) (Mem.), *Voip-Pal.Com, Inc.* v. *Apple Inc.*, 411 F. Supp. 3d 926 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) (Mem.), and *Intellectual Ventures I LLC* v. *Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016). (*Id.* at 54-56). In particular, the Court found that the grouping/forking of calls at issue was "substantively identical to that in *BroadSoft*, and is similarly akin to the abstract concept of the routing of calls or email messages to a given folder, each of which the Federal Circuit has held to be patent-ineligible in separate cases." (*Id.* at 55 (citing *Voip-Pal.Com*, 411 F. Supp. 3d at 95-57 (finding call-routing system patent-ineligible because it was "analogous to well-known, longstanding practices in telephony" and "simply discloses the concept of call routing, which can be — and has been, in the past — accomplished manually"); *Intellectual Ventures*, 838 F.3d at 1317-19 (finding email distribution system patent-ineligible because it was "analog[ous] to a corporate mailroom" and therefore "the claimed systems and methods of screening [email] messages are abstract ideas"))).

In *BroadSoft*, the court found that two similar claims were directed to patent-ineligible abstract ideas. The first claim was for a sequential dialing system, which would sequentially dial a list of telephone numbers in a database. 282 F. Supp. 3d at 780. The claim required "receiving … a call[,] … cross-referencing the telephone address dialed by the caller with a

database[,] … calling the subscriber's first listed phone number[,] … calling the next listed phone number if there is no answer[,] … [and, finally,] connecting the call." *Id.* The *BroadSoft* court concluded that this claim was "directed to organizing human activity: accessing stored information when prompted by a user's incoming call, and executing an automated response according to stored instructions provided in advance by a subscriber." *Id.* at 780-81. It specifically noted that "the call processing system … facilitates connecting a caller with a called party by dialing multiple numbers for the called party if necessary." *Id.* at 781. The *BroadSoft* court also rejected as abstract another patent that would identify outgoing calls from a group of subscribers with a single telephone number. *Id.* at 784. The court found that the patent was directed to an abstract idea, namely, "storing data in a database, looking up data from that database in response to the initiation of a phone call, and inserting at least a portion of that data in the already-existing callerID field." *Id.* at 784-85.

The Amended Complaint contains nothing that would lead this Court to alter its conclusion that "the '728 Patent claims are of the same type as the claims held to be abstract in *BroadSoft, Alice, Intellectual Ventures*, and *Voip-Pal.com.*" (MTD Op. 56). The Court's primary focus remains on the claims themselves. *See Synopsys*, 839 F.3d at 1149. The claims have not changed. Plaintiffs seek to enforce a patent for "[a] method for telephone number grouping" that would require "registering, with a telephone number grouping service, at least two telephone numbers … as grouped telephone numbers" and "providing … at least partial call control for incoming and outgoing telephone

calls with respect to the grouped telephone numbers."  ('728 Patent 12:17-
12:60 (Claim 1); *see also id.* at 13:21-13:54 (Claim 8), 14:50-16:3 (Claim 17)).
As the patent's "Detailed Description" says, this system would allow "service
activity originating from a device associated with one of the grouped telephone
numbers" to "appear[ ] to originate from a selected (and possibly different) one
of the grouped telephone numbers," and would allow incoming calls to be
"forwarded to one or more and/or each of the devices associated with the
grouped telephone numbers."  ('728 Patent 2:45-54).

      It cannot be said, as Plaintiffs attempt to in their opposition, that the
'728 Patent claims are directed to a "dual-control telephony system" or an
"over-the-top network."  (Pl. Opp. 24).  Rather, the relevant claims and the
patent's "Detailed Description" call to mind the telephone switchboard
operators of days gone by.  This leads the Court to conclude (once again) that
the '728 Patent is directed merely to an abstract "method of organizing human
activity."  *Alice*, 573 U.S. at 220.  A human being operating a switchboard-type
system, or serving as an assistant to someone with several devices, could
accomplish this task.  *See BroadSoft*, 282 F. Supp. 3d at 780-81.  As in
*BroadSoft*, "[t]he 'problem' addressed by the claims is a human unavailability
problem, rather than a problem specific to telephony technology.  The claims
do not improve telephony technology, [but] instead invok[e] known telephony
technology merely as a tool to address this human unavailability problem."  *Id.*
at 781 (internal quotation marks omitted).

While not abandoning their earlier argument that the '728 Patent is directed to an eligible concept (*see* Pl. Opp. 21-24), the organizing theme of Plaintiffs' Amended Complaint is a defense of their fallback position that the patent contains a saving "inventive concept." (*See, e.g.*, AC ¶¶ 33, 35-38, 43-44, 48-49, 57, 60-61, 64, 66, 71, 117, 120, 122, 124, 127-129, 133-135, 139-142; *see also* Pl. Opp. 24-26). Following Plaintiffs' lead, the Court turns its focus to the *Alice* step two analysis.

### b. *Alice* Step Two

The Court previously concluded that "the '728 Patent claims simply recite[ ] *what* the system would do, not *how* it would do it." (MTD Op. 57-58). In amending their complaint, Plaintiffs have tried to add more in the way of "how." (*See, e.g.*, AC ¶¶ 43, 48-49, 57, 60-61, 71, 135, 140, 144-145). They also assert that the '728 Patent solved a series of pre-existing, intractable problems. (*Id.* ¶¶ 33, 35-38, 44, 66, 117, 120, 122, 124, 146). And they insist that the '728 Patent claims are "inventive." (*Id.* ¶¶ 64, 116, 129, 134, 139, 142). Unfortunately for Plaintiffs, this is still not enough to survive *Alice* step two. Their amendments (i) go to novelty and nonobviousness rather than inventiveness; (ii) are too generic to show how the system would do what it is supposed to do; and (iii) are conclusory.

As previously discussed, at *Alice* step two, a patent directed to an abstract idea can qualify as eligible under Section 101 if it "include[s] 'an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application.'" *Trinity Info Media*, 72 F.4th at 1365 (quoting *Alice*,

573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72-73)).  The need to show an
inventive concept "ensure[s] that the patent in practice amounts to significantly
more than a patent upon the ineligible concept itself."  *Synopsys*, 839 F.3d at
1151 (internal quotation marks omitted and alteration adopted) (quoting *Alice*,
573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73)).  Arguments to the effect
that claims were "not shown to have been anticipated by or obvious over the
prior art" are insufficient to show an inventive concept because "a claim for a
*new* abstract idea is still an abstract idea."  *Id.* (internal citations omitted);
*accord In re Rosenberg*, 813 F. App'x 594, 598 (Fed. Cir. 2020) (unpublished
decision) ("[A]rguments that [the] novelty of the abstract idea itself … is the
transformative inventive concept are not sufficient to meet [*Alice*] step [two].").

    To the extent that the Court considers the amendments to Plaintiffs'
complaint as illuminative of their claims' inventive concept, *see Sanderling*
*Mgmt. Ltd.* v. *Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to
a complaint can alter what a patent itself states."), the Court finds that
Plaintiffs improperly equate novelty and nonobviousness with inventiveness.
Plaintiffs now allege, in a narrative fashion, that there was a "need[ ]" for "a
system that would allow a customer to call from any device and have the call
ring through to their contact as if it came from the customer's primary phone
number."  (AC ¶ 33).  In this regard, companies like "Alcatel/Nokia, Cisco, and
Ericsson" left AT&T "wanting."  (*Id.* ¶ 36; *see also id.* ¶ 124).  Enter "Mya
Number[, which] presented a use case for programmability for calls."  (*Id.* ¶ 38).
"After months of work, Mya Number did *what no one else could do*."  (*Id.* ¶ 66

(emphasis added)).  It "overcame the *problem in the prior art*" (*id.* ¶ 117 (emphasis added)), namely, being "a conventional telecommunications system with individual numbers … provisioned to each distinct, individual device" (*id.* ¶ 122).  The "[d]elegation of call and service controls," say Plaintiffs, "was *not routine or conventional* at the time of the invention[, and] neither was allowing users to set their own control policies."  (*Id.* ¶ 133 (emphasis added)).  Indeed, Plaintiffs insist that Claim 1 is "an innovative concept" because "the grouping service utilizes a *non-conventional* and non-generic arrangement of technological pieces."  (*Id.* ¶ 139 (emphasis added)).

These new allegations fail to move the needle on inventiveness.  That Plaintiffs' abstract idea was new and/or unconventional is insufficient to show a saving inventive concept.  *See Synopsys*, 839 F.3d at 1151; *see also PersonalWeb Techs. LLC* v. *Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) ("[E]ven accepting [the] view that these particular uses are not well-known, routine, or conventional, [a] claim for a *new* abstract idea is still an abstract idea." (third alteration in original) (internal quotation marks omitted)).[9]  The same goes for the '728 Patent's supposed improvements over the prior art.  *See Ficep Corp.* v. *Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *7 (Fed. Cir. Aug. 21, 2023) ("Questions of nonobviousness such as secondary considerations … are irrelevant when considering eligibility." (citing *SAP*, 898

---

[9]    Another way of characterizing this argument by Plaintiffs is that their "claims are patent-eligible because they are useful."  (Def. Reply 12-13 (citing Pl. Opp. 3, 23, 28)).  The Court agrees with Defendants that utility, like novelty, cannot be equated with inventiveness.  (*Id.* at 13 (citing *Genetic Techs. Ltd.* v. *Merial L.L.C.*, 818 F.3d 1369, 1380 (Fed. Cir. 2016))).

F.3d at 1163 ("Nor is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art[.]")), *cert. denied*, 144 S. Ct. 1115 (2024).

Likewise, the '728 Patent lacks an inventive concept because Plaintiffs still fail to show how the claims would do what they are supposed to do. Plaintiffs' amended allegations — directed to the missing "how" — remain at too high a level of generality. In part, the *Alice* step two inquiry focuses on "*how* the desired result is achieved." *Elec. Power Grp.*, 830 F.3d at 1355. A claim's use of "generic functional language to achieve ... purported solutions" is insufficient. *Two-Way Media Ltd.*, 874 F.3d at 1339; *see also Yu*, 1 F.4th at 1045 ("Because [the claim] is recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea, [the claim] fails at [*Alice*] step two[.]" (internal citations omitted)); *IBM* v. *Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (finding that claim "simply describe[d] the abstract method without providing more" where it used "functional language, at a high level of generality and divorced from any ... technology, to recite claimed functions").

Last time around, the Court concluded that the '728 Patent claims "simply recite[ ] *what* the system would do, not *how* it would do it." (MTD Op. 57-58). This time around, the Court reaches the same conclusion. The claims themselves have not changed. In their Amended Complaint, Plaintiffs have added allegations aimed at explaining how their system would work. Their principal new allegation is that their "solution enables AT&T to group a

user's multiple devices with multiple phone numbers together on its cellular network by delegating partial call control to Mya Number's *over-the-top network*." (AC ¶ 43 (emphasis added)). This "over-the-top network layer was independent of AT&T's traditional systems" (*id.*), which Plaintiffs describe as an "analog system of dumb pipes" (*id.* ¶ 48). "In other words, Mya Number's solution for AT&T was specifically contemplated to be something new and separate from the AT&T network[.]" (*Id.* ¶ 71). To take an illustrative example of the '728 Patent's description of its functionality, Plaintiffs claim that, using their "new technology implementations … , a call that would ordinarily be routed into a phone, would instead get intercepted and controlled by Mya Number's software in the [software development kits] and servers outside of AT&T's network." (*Id.* ¶ 57). They say that "[t]his process is shown graphically in the flow chart contained in Figure 6 of the '728 Patent" (*id.*), and they go on to cite where this is explained in the patent specification (*id.* (citing '728 Patent 7:14-40)). However, the description of Plaintiffs' so-called over-the-top network in Figure 6 and its accompanying specification language amounts to nothing more than a series of generically-defined steps. Here and elsewhere in the '728 Patent (as highlighted in the Amended Complaint), Plaintiffs "fail[ ] to provide any technical details for the tangible components, but instead predominately describe[ ] the system and methods in purely functional terms." *TLI Commc'ns*, 823 F.3d at 612. Thus, in the Court's view, Plaintiffs' "claimed [system] does not add sufficient substance to the underlying abstract idea" of telephone

number grouping/forking and "merely serve[s] as 'a conduit for the abstract idea.'" *Yu*, 1 F.4th at 1045 (quoting *TLI Commc'ns*, 823 F.3d at 612).

Finally, it is not lost on the Court that many of Plaintiffs' amendments to their complaint are conclusory. At the Rule 12(b)(6) stage, a court "need not accept a patent owner's conclusory allegations of inventiveness." *IBM*, 50 F.4th at 1379. "Only 'plausible and specific factual allegations that aspects of the claims are inventive are sufficient.'" *Id.* (quoting *Cellspin Soft, Inc.* v. *Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)). Plaintiffs incant throughout the Amended Complaint that the '728 Patent contains a saving inventive concept. (*See, e.g.*, AC ¶¶ 64 ("the Mya Number inventive system"), 116 ("this inventive concept"), 129 ("the claims of the '728 Patent themselves encompass the inventive functionality of the Twinning Solution"), 139 ("Claim 1 is an innovative concept that does not operate in [a] conventional manner"), 142 ("Plaintiffs' inventive concept … was not conventional call 'forking'")). As previously discussed, however, Plaintiffs in their patent claims, specifications, and Amended Complaint have not made plausible and specific factual allegations showing an inventive concept. Their *ipse dixit* is insufficient. Now, as before, "the claims are missing the requisite inventive concept to qualify as eligible under Section 101, and the Court dismisses Plaintiffs' patent infringement claim." (MTD Op. 58).[10]

---

[10]    Plaintiffs argue, in the final subsection of their opposition brief, that "the unchallenged dependent claims should be considered eligible" and, specifically, "claims 10, 11, 12, and 18 should be considered separately eligible." (Pl. Opp. 29-30). *First*, in the Amended Complaint, Plaintiffs only allege infringement of claims 1, 8, and 17. (AC ¶ 150). *Second*, to the extent Plaintiffs are also alleging infringement of the dependent

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' breach of contract and patent infringement claims is GRANTED, and Defendants' motion to dismiss Plaintiffs' correction of inventorship claim is DENIED. The Clerk of Court is directed to terminate the pending motion at docket entry 179. The Clerk of Court is directed to file this Opinion under seal, viewable to the Court and the parties only.

As the Court finds that the parties have demonstrated a need to file portions of their briefs under seal, the Clerk of Court is further directed to terminate the pending motions at docket entries 178, 184, and 187.

The parties are hereby ORDERED to confer and submit a proposed case management plan on or before **April 7, 2025.**

Lastly, the Court previously filed and provided to the parties an unredacted copy of its March 22, 2023 Opinion and Order under seal and ordered the parties to propose redactions in accordance with *Lugosh* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). However, the parties never did so. (*See* Dkt. #159 (staying all deadlines specified in the Court's March 22,

---

claims, "the [*Alice*] step one inquiry looks to the claim's character as a whole rather than evaluating each claim limitation in a vacuum." *Ericsson Inc.* v. *TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) (internal quotation marks omitted); *see also Rady* v. *Bos. Consulting Grp., Inc.*, No. 2022-2218, 2024 WL 1298742, at *2 (Fed. Cir. Mar. 27, 2024) (per curiam) ("The *Alice* step-one analysis requires us to consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." (internal quotation marks omitted)). As such, at step one, the Court's analysis of the dependent claims is on all fours with its analysis of the claims at issue. Likewise, for the same reasons the Court finds that the claims at issue lack a saving inventive concept, it finds no such saving inventive concept in the dependent claims.

2023 Opinion and Order)).  Accordingly, the parties are hereby ORDERED to file (i) a joint letter suggesting redactions to the March 22, 2023 Opinion and (ii) a joint letter suggesting redactions to this Opinion, on or before **April 14, 2025**.  Taking the parties' suggestions into consideration, the Court will then file redacted versions of both opinions on the public docket.

      SO ORDERED.

Dated:     March 17, 2025
          New York, New York

                            KATHERINE POLK FAILLA
                           United States District Judge